No. 23-13888-J

# In the United States Court of Appeals
# for the Eleventh Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DAVID COPELAND,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Middle District of Florida, Tampa Division
Case No. 8:20-Cr-165-MSS-AAS
Hon. Mary S. Scriven

## INITIAL BRIEF OF DAVID COPELAND

David E. Little, Esq.
BROWN DOHERTY LITTLE
9600 Koger Blvd. N, #235
St. Petersburg, FL 33702
(727) 299-0099 T
FBN 89124
david@lawbdl.com
Attorney for Defendant-Appellant

DATED: June 10, 2024

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rules 26.1-1 and 26.1-3, the following is an alphabetical list of the trial judges, attorneys, persons, and firms with any known interest in the outcome of this case.

1. Allen, Adam B. – Attorney for co-defendant (Moss);

2. Bentley III, A. Lee – Attorney for co-defendant (White, Jr.);

3. Copeland, David B. – Defendant/Appellant;

4. Gordon, Michael A. – co-defendant;

5. Handberg, Roger B. – United States Attorney;

6. Helfmeyer, Devon – Special Assistant United States Attorney;

7. Little, David E. – Attorney for the Defendant/Appellant;

8. Lopez, Carlos A. – USDOJ Trial Attorney;

9. Mehta, Jason P. – Attorney for co-defendant (White, Jr.);

10. Michelich, John A. – USDOJ Senior Litigation Counsel;

11. Moss, James W. – co-defendant;

12. Rookard, Katherine – Special Assistant United States Attorney;

13. Salicrup, Alejandro J. – USDOJ Trial Attorney (retired);

14. Sanders, Jeremy R. – Assistant United States Attorney, Appellate Division;

15. Sansone, Hon. Amanda A. – United States Magistrate Judge;

16. Scriven, Hon. Mary S. – United States District Court Judge;

i

17. Solomon, Clayton P. – Special Assistant United States Attorney;

18. White, Edward C. – co-defendant;

19. Wise, J. Jervis – Attorney for co-defendant (Gordon).

No publicly traded company or corporation has an interest in the outcome of this appeal.

June 10, 2024                                         _____/s/ David E. Little_____
                                                                  DAVID E. LITTLE, ESQ.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant-Appellant, David Copeland ("Copeland"), respectfully requests oral argument in this matter.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE OF INTERESTED PERSONS ..........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CITATIONS ......................................................................................vi

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION................................................................................................ viii

STATEMENT OF THE ISSUES...............................................................................1

STATEMENT OF THE CASE...................................................................................2

      A.    *Procedural Background* ........................................................................2

      B.    *Government's Evidence at Second Trial* ……………………………3

      C.    *Sentencing* ...........................................................................................6

STANDARD OF REVIEW ....................................................................................10

SUMMARY OF THE ARGUMENT .....................................................................11

ARGUMENT AND CITATIONS OF AUTHORITY ............................................13

I.    THE JURY'S GUILTY VERDICT ON THE SUBSTANTIVE COUNTS OF SOLICITING AND OFFERING KICKBACKS WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE BASED ON COPELAND'S ACQUITTAL OF THE OVERALL CONSPIRACY INVOLVING THOSE SPECIFIC OVERT ACTS........................................13

II.    THE DISTRICT COURT ERRED IN DETERMINING COPELAND WAS A MANAGER OR SUPERVISOR OF THE SUBSTANTIVE COUNTS OF CONVICTION.............................19

III.   THE DISTRICT COURT ERRED IN DETERMINING
       COPELAND WAS NOT ENTITLED TO A TWO-
       LEVEL REDUCTION FOR BEING A ZERO-POINT
       OFFENDER ................................................................................................ 22

IV.    THE DISTRICT COURT ERRED IN DETERMINING
       COPELAND WAS NOT ENTITLED TO A TWO-
       LEVEL REDUCTION FOR ACCEPTANCE OF
       RESPONSIBILITY FOLLOWING HIS ACQUITTAL
       ON THE CONSPIRACY CHARGE ............................................................ 23

CONCLUSION ..................................................................................................... 25

CERTIFICATE OF COMPLIANCE ..................................................................... 26

CERTIFICATE OF SERVICE ............................................................................... 27

# TABLE OF CITATIONS

**Cases**                                                                 **Page(s)**

United States v. Amedeo,
    370 F.3d 1305 (11th Cir. 2004) .............................................................10

United States v. Barner,
    572 F.3d 1239 (11th Cir. 2009) .............................................................23

United States v. Brown,
    934 F.3d 1278 (11th Cir. 2019) .............................................................10

United States v. Dominguez,
    661 F.3d 1051 (11th Cir. 2011) .............................................................10

United States v. Glover,
    179 F.3d 1300 (11th Cir. 1999) .............................................................21

United States v. Jiminez,
    224 F.3d 1243 (11th Cir. 2000) .............................................................10

United States v. Monroe,
    866 F.2d 1357 (11th Cir. 1989) .............................................................13

United States v. Rodgers,
    951 F.2d 1220 (11th Cir. 1992), *amended* 972 F.2d 1253
    (11th Cir. 1992)...................................................................................20

United States v. Sosa,
    777 F.3d 1279 (11th Cir. 2015) .............................................................17

United States v. Starks,
    157 F.3d 833 (11th Cir. 1998) .............................................................16

**Statutes**

18 U.S.C. § 2 ...............................................................................2, 17

18 U.S.C. § 371 ...............................................................................2

18 U.S.C. § 3231 ................................................................................. vii

18 U.S.C. § 3553(a)(2).........................................................................20

28 U.S.C. § § 994(a)(2).........................................................................20

28 U.S.C. § 1291 ................................................................................. vii

42 U.S.C. § 1320a-7b(b)(1) ....................................................................2

42 U.S.C. § 1320a-7b(b)(2) ....................................................................2

**Sentencing Guidelines**

U.S.S.G. § 3B1.1(b) .........................................................7, 11, 19, 22

U.S.S.G. § 3E1.1(a).......................................................................7, 23

U.S.S.G. § 4C1.1 .......................................................................7, 11, 22

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231 because Copeland was charged pursuant to a Superseding Indictment (Doc. 166) for violations of federal criminal laws. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the District Court entered a final Judgment (Doc. 464), which Copeland timely appealed (Doc. 466).

## STATEMENT OF THE ISSUES

1.   *Whether the jury's guilty verdicts on the substantive counts of soliciting and offering kickbacks was supported by sufficient evidence based on Copeland's acquittal of the overall conspiracy involving those specific overt acts?*

2.   *Whether the District Court erred in determining Copeland was a manager or supervisor of the substantive counts of conviction?*

3.   *Whether the District Court erred in determining Copeland was not entitled to a two-level reduction for being a zero-point offender?*

4.   *Whether the District Court erred in determining Copeland was not entitled to a two-level reduction for acceptance of responsibility following his acquittal of the conspiracy charge?*

## STATEMENT OF THE CASE

### *Procedural Background*

On October 27, 2021, a Federal Grand Jury in Tampa, Florida returned a six (6) count Superseding Indictment against Copeland.  (Doc. 166).

 Count One of the Superseding Indictment charged Copeland with Conspiracy to (a) Defraud the United States, (b) Soliciting and Receiving Kickbacks, and (c) Offering and Paying Kickbacks, all in violation of 18 U.S.C. § 371.

Counts Two and Three charged Copeland with Soliciting and Receiving Health Care Kickbacks and Bribes, in violation of 42 U.S.C. § 1320a-7b(b)(1) and 18 U.S.C. § 2.

Counts Four, Five, and Six charged Copeland with Offering and Paying Health Care Kickbacks and Bribes, in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2.

Count One of the Superseding Indictment also alleged specific overt acts that the Government believed were committed in furtherance of the conspiracy. (Doc. 166, ¶¶ (D)19a-i).  Specific to this appeal, the Government alleged five (5) specific overt acts involving Copeland.  The Government alleged that on June 1, 2015, Copeland received a kickback in the amount of $295,593.72, and on June 11, 2015, Copeland received a kickback in the amount of $502,606.76. (Doc. 166, ¶¶

2

(D)19f.1-f.2).  The Government also alleged in the Superseding Indictment that Copeland committed the overt acts of paying kickbacks to his co-defendant, Gordon, on June 4, 2015, June 13, 2015, and June 19, 2015.  (Doc. 166, ¶¶ (D)19g-i).

Notably, the overt act alleged in ¶ (D)19f.1, involved the same payment that was allegedly a kickback received, as alleged in Count Two of the Superseding Indictment.  Likewise, the overt act in ¶ (D)19f.2, involved the same payment that was allegedly a kickback received, as alleged in Count Three of the Superseding Indictment.  Finally, the overt acts alleged in ¶¶ (D)19g-i, involved the same payments alleged in Counts Four, Five, and Six, respectively.

This matter proceeded to a first trial on December 5, 2022, and on December 12, 2022, the Court declared a mistrial after the jury was unable to return a unanimous verdict as to any of the counts charged.

On June 12, 2023, the re-trial in this matter began.  On June 16, 2023, the jury returned its verdicts finding Copeland not guilty of the conspiracy charged in Count One and returned guilty verdicts as to the substantive counts charged in Counts Two through Six.

### *Government's Evidence at the Second Trial*

The Government's theory at trial was simple, but wrong.  The testimony presented at trial was that co-defendant Moss created Florida Pharmacy Solutions

3

("FPS") after his prior company was shut down.  After starting FPS, he hired Copeland to work for him as a regional sales consultant.  (Doc. 414, p. 167:20).

Moss was in charge at FPS and based on his fraudulent conduct he pled guilty to conspiracy to pay kickbacks, paying kickbacks, defrauding the government, and distribution of a controlled substance.  (Doc. 414, p. 170:23-25).  After pleading guilty he decided to cooperate with the Government in order to help himself and part of that cooperation involved trying to implicate Copeland.  During this testimony, Moss claimed that he was involved in a conspiracy with co-defendants Chris White, Mike Gordon, Copeland, and others.  (Doc. 414, p. 171:13-14).

Moss claimed that the individuals that were involved in the conspiracy would bribe doctors with hunting trips, fishing trips, trips to casinos, and in other ways for the purpose of influencing those doctors to refer patients to FPS.  (Doc. 414, p. 172:3-8).  According to Moss, by influencing the doctors, they would continue to refer patients who needed compounded creams to FPS, and then FPS could in turn, bill TRICARE for the pain creams.  (Doc. 414, p. 172:11-16).

Moss alleged that Copeland was involved in the bribing of doctors and would request that Moss pay for hunting trips that Copeland would take doctors on as a form of bribe.  (Doc. 414, p. 172:17-22).  Because Copeland was an independent contractor of FPS, he was paid through sales commissions, and part of

4

those commissions, according to Moss, came directly from TRICARE based on the referrals for pain creams.  (Doc. 414, p. 175:1-11).  Through Moss, the Government also attempted to prove that Copeland was involved in Moss' unlawful scheme to influence doctors to refer patients to FPS by handing out custom prescription pads created by co-defendant White to doctors that had pre-set mixtures of compounded creams which could be billed at high prices to TRICARE. (Doc. 415, p. 19:6-25).

In or around 2014, co-defendant Gordon joined FPS as a sales consultant. (Doc. 414, p. 212:18-19).  Gordon was placed into Copeland's sales territory, even though Copeland did not recruit Gordon to FPS, nor did he want him in his sales territory.  (Doc. 414, p. 212:20 – 213:8; Doc. 415, pp. 95:1 – 96:16).  Despite being assigned to Copeland's sales territory and working under Copeland, Moss negotiated Gordon's contract and Moss had to concede that he provided multiple checks directly to Gordon without Copeland's knowledge.  (Doc. 415, pp. 110:3 – 114:13).

The Government also called Gordon during trial in its continued efforts to prove Copeland was involved in the conspiracy with Moss and Gordon.  Gordon, despite being recruited by Moss, negotiating his contract with Moss, and receiving checks directly from Moss, claimed that he reported to Copeland at FPS.  (Doc. 415, p. 216:3-4).  Gordon, similar to Moss, testified that he personally took doctors

out to breakfast, lunch, dinner, and on trips in order to influence them to refer patients to FPS. (Doc. 415, p. 216:10-13). He also testified that Copeland had knowledge of his activities and that they would discuss those activities.

Finally, the Government established that Copeland received two payments from FPS in which the substantial share of those funds passed directly through to Gordon in three separate payments. (Composite Exhibit 2-6). The Government's theory was that these payments proved Copeland committed specific overt acts of the conspiracy, as well as the allegations in the substantive counts of the Superseding Indictment.

The jury deliberated and ultimately returned a split verdict. The jury clearly rejected the Government's theory that Copeland was involved in the conspiracy with Moss and Gordon. Despite the hours of testimony from Moss and Gordon, the jury acquitted Copeland of Count One of the Superseding Indictment which charged him with conspiracy. The jury, however, returned a guilty verdict as to the five (5) substantive charges in the Superseding Indictment.

### *Sentencing*

Sentencing in this matter took place on November 14, 2023. (Doc. 483). Prior to sentencing the United States Probation Office prepared a Presentence Investigation Report and the final revisions were submitted to the Court on October 31, 2023. (Doc. 437).

Copeland made multiple objections to the Presentence Report prior to sentencing. (Doc. 437, pp. 22-31). Copeland objected to the representation that he was a manager or supervisor and therefore subject to a three-level upward adjustment pursuant to U.S.S.G. § 3B1.1(b). (Doc. 437, p. 23, ¶ 2). Copeland also preserved his objection that he should receive the benefit of a two-level downward adjustment as a zero-point offender pursuant to U.S.S.G. § 4C1.1. (Id.). Finally, Copeland argued that despite going to trial, he contested any involvement in the overall conspiracy, was acquitted of the conspiracy, and therefore should receive a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). (Doc. 437, p. 25, ¶ 3).

At Sentencing, the Government argued that the underlying facts of the case established that Copeland was a manager or supervisor and therefore subject to an aggravating role adjustment. Copeland's position, however, was that the Government failed, both at trial, and now at Sentencing, to prove that Copeland controlled five or more participants that were involved in criminal activity. When the Court questioned the Government about who the other individuals were (when discussing the loss amount) the Government was unable to identify the individuals. The Government was only able to identify one individual, who never testified, whose name was mentioned at trial. (Doc. 483, p. 9:7-11 and p. 9:24 – p. 10:10). The Government never identified five or more participants that the Court could

7

rely on to support an aggravating role adjustment. Despite the Government's failure to identify the participants during Sentencing, the Court overruled Copeland's objection to an aggravating role and imposed a three-level upward adjustment. (Doc. 483, p. 17:6-7).

Based on the Court's finding that Copeland was a manager or supervisor, the Court also overruled Copeland's objection that he should receive a two-level downward adjustment as a zero-point offender. (Doc. 483, p. 26:18-20).

Finally, Copeland objected to not receiving a two-level downward adjustment for acceptance of responsibility. Copeland argued that despite going to trial and contesting his involvement in the overall conspiracy, which he was acquitted of, he should receive two-levels for acceptance of responsibility. Copeland based his argument on the preservation of a legal issue, not factual disputes. (Doc. 483, p. 22:10-15). Copeland never disputed he received checks and paid Gordon, but he contested the legal issue of whether he knowingly and willfully accepted a kickback if he had no knowledge that the underlying payments paid by TRICARE were generated through unlawful conduct. Notably, the jury agreed that Copeland did not have knowledge of the illegal conduct of the people that were involved in the conspiracy, which is evidenced by the jury's not guilty verdict on Count One. Over Copeland's objection the Court denied his request for acceptance of responsibility. (Doc. 483, p. 45:9-16).

8

The Court arrived at an offense level of twenty-seven, and sentenced Copeland to fifty-one months incarceration.  (Doc. 464).

This appeal follows Copeland's conviction of Counts Two, Three, Four, Five, and Six, as well as the judgment and sentence in this matter.

## STANDARD OF REVIEW

The Court reviews questions regarding the sufficiency of the evidence to sustain a conviction *de novo*.  United States v. Brown, 934 F.3d 1278 (11th Cir. 2019).

A District Court's determination that a defendant is subject to an aggravating role adjustment is reviewed for clear error.  United States v. Jiminez, 224 F.3d 1243 (11th Cir. 2000).

A District Court's interpretation and application of the Sentencing Guidelines are reviewed *de novo*, and the Court's factual findings are reviewed for clear error. United States v. Dominguez, 661 F.3d 1051,1061 (11th Cir. 2011).

A District Court's determination whether guidelines should be reduced for acceptance of responsibility is reviewed for clear error.  United States v. Amedeo, 370 F.3d 1305 (11th Cir. 2004).

## SUMMARY OF THE ARGUMENT

The jury's verdicts as to Counts Two through Six of the Superseding Indictment were not based on sufficient evidence of intent, and as a result the verdicts resulted in inconsistent verdicts. Copeland was acquitted of the overall conspiracy he was charged with, which specifically alleged overt acts that comprised the substantive offenses charged in Counts Two through Six. If the jury failed to find that Copeland acted knowingly and willfully in defrauding the United States, thereby acquitting him of the conspiracy, the evidence would also be insufficient to prove that Copeland knowingly and willfully solicited or paid kickbacks.

The verdicts should be set aside.

The District Court made errors during Copeland's Sentencing, which resulted in an offense level of twenty-seven (27), rather than twenty (20). Copeland should not have received an aggravating role adjustment since the Government failed to establish the requirements of U.S.S.G. § 3B1.1(b).

As a result of the District Court imposing an aggravating role adjustment, Copeland was also deprived of the benefit of the zero-point offender guideline located at U.S.S.G. § 4C1.1.

Finally, despite proceeding to trial, Copeland should have received the benefit of a two-level downward adjustment for acceptance of responsibility.

Copeland was acquitted of the overall conspiracy and his defense challenged the legal position of whether he could solicit or pay kickbacks when he had no knowledge that the payments from the TRICARE program were generated by unlawful conduct.

Should the verdicts not be set aside, Copeland is entitled to a resentencing.

## ARGUMENT

**I.  THE JURY'S GUILTY VERDICTS ON THE SUBSTANTIVE COUNTS OF SOLICITING AND OFFERING KICKBACKS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE BASED ON COPELAND'S ACQUITTAL OF THE OVERALL CONSPIRACY INVOLVING THOSE SPECIFIC OVERT ACTS.**

The Government proceeded to trial in this matter based on a six (6) count Superseding Indictment.  Copeland argues that the jury's verdicts of guilt on the substantive counts charged in the Superseding Indictment were not supported by sufficient evidence, thereby resulting in an inconsistent verdict.  Determining whether sufficient evidence exists requires an examination of whether the evidence, when viewed in the light most favorable to the government and accepting reasonable inferences and credibility choices by the factfinder, would enable the trier of fact to find the defendant guilty beyond a reasonable doubt. United States v. Monroe, 866 F.2d 1357 (11th Cir. 1989).  In the present case the Government failed to present sufficient evidence of Copeland's intent, and therefore the guilty verdicts should be set aside.

Count One of the Superseding Indictment alleged that Copeland conspired to defraud the United States, solicited and received kickbacks, and offered and paid kickbacks.  (Doc. 166).  In this case the jury was instructed that Copeland was charged with conspiring to commit three separate substantive crimes, and that the Government was not required to prove that Copeland committed all three crimes,

13

only that Copeland willfully conspired to commit one of those crimes. (Doc. 407, p. 11).

The Government charged Copeland in Counts Two and Three of the Superseding Indictment with Soliciting and Receiving Health Case Kickbacks and Bribes, and the specific allegations were two payments received by Copeland on June 1, 2015, and June 11, 2015. (Doc. 166, pp. 16-17). Those two payments were the same payments identified as overt acts in Count One of the Superseding Indictment. (Doc. 166, ¶¶ (D)19f.1 and f.2).

Likewise in Counts Four, Five, and Six, of the Superseding Indictment, the Government charged Copeland with three substantive offenses of Offering and Paying Health Care Kickbacks and Bribes. (Doc. 166, pp. 17-18). Those substantive counts related to three payments made by Copeland to co-defendant Gordon for the commissions Gordon generated. Those payments were made on June 4, 2015, June 13, 2015, and June 19, 2015. (Doc. 166, p. 18). Those three payments were the same payments as alleged as overt acts in Count One of the Superseding Indictment against Copeland. (Doc. 166, ¶¶ (D)19g-i).

As to Count One of the Superseding Indictment, the jury was further instructed that Copeland could only be found guilty of Count One if the Government proved beyond a reasonable doubt that:

1) Two or more people in some way agreed to try to accomplish a shared

14

and unlawful plan;

2) The Defendant knew the unlawful plan and willfully joined in it;

3) During the conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the indictment; and

4) The overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.  (Doc. 407, p. 13).

Finally, as to Count One, the jury was instructed that "knowingly" means that an act was done voluntarily and intentionally and not because of a mistake or by accident, and that "willfully" means that the act was committed voluntarily and purposely, with the intent to do something the law forbids.  (Doc. 407, p. 10).

As to Count One, the jury acquitted Copeland.  (Doc. 413).  Therefore, despite the Government's witnesses, specifically Moss and Gordon, the jury rejected the Government's theory that Copeland had conspired, or agreed, with Moss and Gordon to unlawfully influence doctors to make referrals to FPS in order to increase commissions paid from TRICARE, i.e. the kickbacks.  Based on the jury instructions given in this case, the jury verdict on Count One would lead to the conclusion that Copeland did not know the purpose of the unlawful plan, and/or did not willfully join in the plan, as required by elements one and two.  Copeland's knowledge, and the willful element, were the only issue in dispute at trial;

15

Copeland never challenged that the payments from TRICARE were received and subsequently a substantial portion was paid directly to Gordon.

The jury clearly rejected the Government's evidence that Copeland had knowledge of the unlawful acts of his co-defendants or any other unindicted individuals.

However, despite concluding that Copeland did not have the specific intent to be involved in the conspiracy charged in Count One, the jury returned guilty verdicts as to Counts Two, Three, Four, Five, and Six. These guilty verdicts, based on the jury's fact finding, were not supported by sufficient evidence of Copeland's intent.

This Court has held that to sustain a conviction for violating the anti-kickback statute the Government is required to prove that the defendant knew his or her conduct specifically violated the anti-kickback statute. See United States v. Starks, 157 F.3d 833 (11th Cir. 1998). In the present case, to prove Copeland knew by accepting the checks from TRICARE and subsequently making payments to Gordon, the Government would have to present sufficient evidence that Copeland knew his conduct, receiving and paying commissions, violated the law. Most importantly, that the payments from TRICARE that he received were generated by the unlawful actions of Moss and Gordon. The Government clearly did not present evidence of Copelands knowledge that his conduct violated the law, or at least not

16

evidence the jury should have relied on for a conviction, otherwise the jury would have returned a guilty verdict as to Count One of the Superseding Indictment as well.

It is worth mentioning that the Government also charged Copeland with aiding and abetting in committing the substantive violations charged in Counts Two, Three, Four, Five, and Six.  In order to establish a conviction under this theory the Government would be required to prove that "(1) someone committed the substantive offense; (2) [Copeland] contributed to and furthered the offense; and [Copeland] intended to aid in its commission."  United States v. Sosa, 777 F.3d 1279, 1292 (11th Cir. 2015) (citing 18 U.S.C. § 2).  Again, the Government would be required to prove that Copeland knew that the payments from TRICARE that he received were generated by the unlawful actions of Moss and Gordon regardless of the theory pursued by the Government in Copeland's case, the Government would be required to prove Copeland's intent to commit the criminal offense.  The Government has failed to prove specific criminal intent on the part of Copeland to commit the substantive offenses of accepting or paying kickbacks.

As to the substantive charges in the Superseding Indictment, the jury was instructed that in order to sustain a conviction the Government was required to prove that Copeland intended to act knowingly and willfully.  (Doc. 407, pp. 15 and 17).

17

To act "knowingly" would require the Government to prove that Copeland received and paid kickbacks voluntarily and intentionally and not because of a mistake or by accident. (Doc. 407, p. 10). Further, that when Copeland received or paid the kickbacks he did so voluntarily and purposely, with the intent to do something the law forbids…" (Doc. 407, p. 10).

In reviewing the evidence in its totality, what was proven without dispute was that at the very least Moss and Gordon conspired to break the law. They unlawfully influenced doctors to refer patients to FPS and they accepted payments from TRICARE with the actual knowledge of their unlawful actions. The conduct of Moss and Gordon satisfies all the elements of not only a conspiracy but of also accepting and paying kickbacks.

What Copeland disputed at trial was whether he had knowledge of Moss and Gordon's actions, or anyone else's actions, when he accepted payments from Moss that were paid from TRICARE, and then paid to Gordon. In other words, was there evidence that Copeland knew the payments were generated unlawfully, and the answer to that question is no.

Copeland's convictions on the substantive counts charged in Count Two, Three, Four, Five, and Six, were not based on sufficient evidence, they were inconsistent with the jury's finding as Copeland's knowledge as evidenced by the acquittal on Count One, and the convictions should be set aside.

18

## II.    THE DISTRICT COURT ERRED IN DETERMINING COPELAND WAS A MANAGER OR SUPERVISOR OF THE SUBSTANTIVE COUNTS OF CONVICTION.

The Final Presentence Report in this case included a three-level upward adjustment for aggravating role pursuant to U.S.S.G. § 3B1.1(b).  Pursuant to U.S.S.G. § 3B1.1(b), if the defendant was a manager or supervisor **and** the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.  U.S. Probations position was that Copeland *directed approximately twelve sales representatives* (Doc. 437, ¶ 31), and therefore he qualified for the aggravating role adjustment.  However, there was no evidence presented that the twelve sales representatives were participants in the commission of any criminal offense.

Application Note 1 of U.S.S.G. § 3B1.1, provides that a "participant" is a person who is criminally responsible for the commission of the offense.  In the present case, the Government never proved that there were five or more participants, i.e. people responsible for the offense, or that Copeland directed one or more participants in the criminal offense.  The Government's evidence at trial consisted of two cooperating co-defendants that testified as to their criminal conduct, a third co-defendant's criminal conduct, and the jury rejected the Government's theory that Copeland was involved in the conspiracy.  Therefore, for purposes of an aggravating role adjustment, Copeland was not legally involved in

19

unlawful conduct with any other individuals, he was only convicted of the substantive counts.  However, in imposing an aggravating role adjustment, it appears the District Court considered the acquitted conduct in its determination that Copeland was a manager or supervisor.

Notably, the United States Sentencing Commission has voted to amend the Sentencing Guidelines to prohibit sentencing Judges from using conduct for which a defendant was acquitted of from being used in calculating a sentence range under the guidelines.  (*See* 2024 Amendments to the Sentencing Guidelines § 1B1.3). The purpose of this amendment is to recognize the statutory obligations of the Commission in imposing rules that promote respect for the law.  *See* 28 U.S.C. § 994(a)(2), *id.* § 991(b)(1)(A) & (B); 18 U.S.C. § 3553(a)(2).

In United States v. Rodgers, this Court held that an aggravating role adjustment must be based on a defendant's role in the offense of conviction, rather than other relevant criminal conduct.  951 F.2d 1220 (11th Cir. 1992), *amended*, 972 F.2d 1253 (11th Cir. 1992).  This enshrines the policy of the Sentencing Commission in the amendments directing Courts to not rely on acquitted conduct in sentencing.  The Count of conviction in the present case includes two counts of receiving kickbacks and three counts of paying kickbacks.  At best, the Government proved that the Counts of convictions involved Copeland and his co-

defendants, Moss and Gordon, but there was no evidence that Copeland exercised any control over Moss or Gordon.

To the contrary, despite being assigned to Copeland's sales territory and working under Copeland, Moss negotiated Gordon's contract and Moss had to concede that he paid numerous checks directly to Gordon without Copeland's knowledge.  (Doc. 415, pp. 110:3 – 114:13).  Clearly this is evidence that Moss and Gordon were involved in a criminal scheme behind Copeland's back.  The Government flat out failed to prove that Copeland exercised any control over any individual involved in the alleged criminal activity.

Even assuming Copeland controlled anyone, or the Government proved the requirements to impose an aggravating role adjustment, which they haven't, at best, Copeland was an unknowing conduit for the illegal proceeds generated by Moss and Gordon to pass through.  Similar to the Court's decision in Glover, Copeland simply exercised control over the payments that were generated by Gordon as a result of his unlawful conduct, i.e. the assets of the conspiracy, and that is insufficient to warrant an aggravating role adjustment.  United States v. Glover, 179 F.3d 1300 (11th Cir. 1999).

Therefore, a three-level increase for an aggravating role adjustment was improper.

## III.   THE DISTRICT COURT ERRED IN DETERMINING THAT COPELAND WAS NOT ENTITLED TO A TWO-LEVEL REDUCTION FOR BEING A ZERO-POINT OFFENDER.

The District Court should have given Copeland a two-level downward adjustment for being a zero-point offender. However, based on the Court's determination that Copeland was a manager or supervisor, the Court's interpretation of U.S.S.G. § 4C1.1, precluded the downward adjustment for being a zero-point offender.

Section 4C1.1, U.S.S.G., provides for a two-level decrease in a defendant's offense level if ten (10) criteria are met. In the present case, Copeland satisfied all of the criteria with one exception. Section 4C1.1(a)(10), excludes the two-level adjustment if the defendant received an adjustment under § 3B1.1 (Aggravating Role) or was engaged in a continuing criminal enterprise. At Sentencing, the Court determined that because Copeland received an aggravating role adjustment under U.S.S.G. § 3B1.1, he was precluded from the benefit of being a zero-point offender. (Doc. 483, pp. 26-27).

Should this Court find in favor of Copeland as to the District Court's error in applying an aggravating role adjustment, Copeland would be eligible for a two-level reduction as a zero-point offender.

22

## IV.   THE DISTRICT COURT ERRED IN DETERMINING COPELAND WAS NOT ENTITLED TO A TWO-LEVEL REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY FOLLOWING HIS ACQUITTAL ON THE CONSPIRACY CHARGE.

In the present case, Copeland proceeded to trial to contest a conspiracy charge, held the government to its burden of proof as to the conspiracy allegations, and was acquitted of the overall conspiracy charge.  Despite Copeland proceeding to trial, his acquittal of the overall conspiracy charge, a charge he successfully contested, entitles him to a two-level reduction for acceptance of responsibility.

Pursuant to U.S.S.G. § 3E1.1, if a defendant clearly demonstrates acceptance of responsibility for his offense, his offense level should be reduced by two-levels.  Application Note Two of § 3E1.1 provides that "conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction."  Copeland proceeded to trial, challenged the factual allegations of the Government that he was involved in a $50 million dollar health care fraud conspiracy, and the jury agreed and acquitted Copeland of his alleged involvement in the conspiracy.

Similarly, in United States v. Barner, this Court found error in sentencing when a defendant proceeded to trial, was acquitted of a conspiracy charge, and was convicted of other substantive charges.  572 F.3d 1239 (11th Cir. 2009).  Like Barner, Copeland did not challenge the facts of the case, i.e. his involvement as a sales representative with FPS, nor did he testify and deny his actions.  Rather, Copeland maintained his innocence and challenged the credibility of the

23

Government's evidence, consisting of two cooperating co-defendants, who testified that Copeland was involved in the conspiracy, which the jury rejected. While the jury returned guilty verdicts as to the five substantive charges, Copeland never challenged the fact that those payments were received, rather he legally challenged whether his lack of knowledge of an ongoing conspiracy involving other people could result in a conviction for accepting and paying kickbacks when he was not involved in the conspiracy. A legal determination that Copeland contends the jury got wrong.

Copeland preserved this issue by objecting to Probation's denial of acceptance of responsibility in the Final Presentence Report that was filed with the Court. (Doc. 437, p. 4, ¶ 3). Probation refused to include acceptance of responsibility based on Copeland proceeding to trial, but also because Copeland contested the restitution amount that Probation believed was applicable to Copeland. (Doc. 437, p. 5). Notably, during Copeland's sentencing, the District Court determined that a lower restitution amount was applicable, not the restitution amount that Probation included in the Final Presentence Report (Doc. 483, p. 12-14); another legal argument that Copeland successfully argued at Sentencing.

Based on Copeland's successful challenges to the evidence, including the acquittal on the overall conspiracy, a downward adjustment of two-levels for acceptance of responsibility was appropriate in this case.

## **CONCLUSION**

**WHEREFORE¸** the Appellant, DAVID COPELAND, respectfully requests that this Court vacate the guilty verdicts, the judgment, and the sentence in this matter based on a finding that the verdicts are not supported by sufficient evidence to rise to a level of proof beyond a reasonable doubt.

In the alternative, the Appellant, DAVID COPELAND, respectfully requests that this Court vacate the sentence in this matter based on errors made by the District Court and remand this case for resentencing.

Respectfully submitted,


_____/s/ David E. Little_____
DAVID E. LITTLE, ESQUIRE
Brown Doherty Little
9600 Koger Blvd. N, #235
St. Petersburg, FL 33702
Telephone: (727) 299-0099, Ext. 2
Florida Bar Number 89124
david@lawbdl.com
Attorney for Defendant-Appellant

## **CERTIFICATE OF COMPLIANCE**

1. This brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B)'s type-volume requirement. As determined by Microsoft Office Word 10's word-count function, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and 11th Circuit Rule 32-4, this brief contains 4,893 words.

2. This brief further complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and with Federal Rule of Appellate Procedure 32(a)(6)'s type-style requirements. Its text has been prepared in a proportionally spaced serif typeface in roman style using Microsoft Office Word 10's 14-point Times New Roman font.


Dated: <u>June 10, 2024</u>     <u> */s/ David E. Little* </u>
             DAVID E. LITTLE, ESQ.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that the original and four (4) copies of the foregoing have been furnished by U.S. Mail to the U.S. Court of Appeals, Eleventh Circuit, located at 56 Forsyth Street, N.W., Atlanta, GA 30303, and that true and correct copies of the foregoing have been furnished by U.S. Mail to the following interested persons on this <u>*10th*</u> day of <u>*June*</u>, 2024:

United States Attorney's Office
Jeremy R. Sanders, AUSA
Fraud Section/Appellate Division
1400 New York Ave., NW
Washington, DC 20005

David Byron Copeland, Appellant
Coleman Low FCI
USM# 26897-017
P.O. Box 1031
Coleman, FL 33521

_____*/s/ David E. Little*_____
DAVID E. LITTLE, ESQUIRE
Brown Doherty Little
9600 Koger Blvd. N, #235
St. Petersburg, FL 33702
Telephone: (727) 299-0099, Ext. 2
Florida Bar Number 89124
david@lawbdl.com
Attorney for Defendant-Appellant